UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO.:

AT LAW AND IN ADMIRALTY

NATALIE REEDER as mother and natural
Guardian of B.R., a minor,
      Plaintiff

v.

CARNIVAL CORPORATION d/b/a
CARNIVAL CRUISE LINE,
      Defendant.

_____/

## COMPLAINT FOR DAMAGES

The Plaintiff, NATALIE REEDER, as mother and natural guardian of B.R., a minor (hereinafter "Plaintiff" or "B.R."), hereby sues the Defendant, CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE LINE, (hereinafter "Defendant" or "CARNIVAL") and files this Complaint for Damages and says:

## THE PARTIES AND JURISDICTION

1.    This is an action for damages which exceed $75,000 exclusive of interest, costs, and attorney's fees.

2.    **THE PLAINTIFF.**  The Plaintiff, NATALIE REEDER, as mother and natural guardian of B.R., a minor (hereinafter "Plaintiff" or "B.R."), is *sui juris* and is a citizen and resident of Temecula, California.  B.R. is 5 years old and is thus a minor child.

3.    **THE DEFENDANT**.  The Defendant, CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE LINE (hereinafter referred to as CARNIVAL or Defendant or the cruise line), is incorporated outside of the state of Florida in the country of Panama, but does business in

1

the State of Florida, and for purposes of diversity of citizenship is a citizen of Florida, and at all times material hereto was and is doing business in Miami Dade County, Florida. At all times material hereto the Defendant owned and/or operated the cruise ship on which the subject negligence occurred.

4.     **FEDERAL SUBJECT MATTER JURISDICTION**. Federal subject matter jurisdiction arises under and is by virtue of Diversity of Citizenship pursuant to 28 U.S.C. § 1332, as this is a civil action where the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs, and is between citizens of different States and/or citizens of a State and citizens or subjects of a foreign state. This action also arises under and is by virtue of the admiralty or maritime jurisdiction pursuant to 28 U.S.C. § 1333. Further, this action is being filed in Federal Court in Miami Dade County, Florida, as required by the venue selection clause in the Passenger Contract Ticket issued by the Defendant.

5.     **VENUE AND PERSONAL JURISDICTION**. The Defendant, at all times material hereto, itself or through an agent or representative, in the County and in the District in which this Complaint is filed:

(a) Operated, conducted, engaged in or carried on a business venture in this state and/or county; and/or

(b) Had an office or agency in this state and/or county; and/or

(c) Engaged in substantial activity within this state; and/or

(d) Committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181 or 48.193.

## <u>OTHER ALLEGATIONS COMMON TO ALL COUNTS</u>

6.      All conditions precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

7.      **<u>DATE OF THE INCIDENT</u>**.  The incident occurred on March 11, 2018. On the date of the incident, B.R. was 2 years old and thus a minor child at the time of the subject incident.

8.      **<u>LOCATION OF THE INCIDENT.</u>**   The incident occurred onboard the vessel the *Carnival Splendor*, a ship in navigable water, while the Plaintiff was a passenger onboard. Accordingly, the Plaintiff's claims are governed by general maritime law.  Specifically, this incident occurred on Deck 10 on the slippery tile floor in the passenger walkway leading to the kids club while the ship was in navigable waters.

9.      **<u>STATUS OF THE PLAINTIFF AT THE TIME OF THE INCIDENT.</u>** At all times material hereto, the Plaintiff was a passenger on the subject cruise ship described herein and accordingly was an invitee while on the vessel.

10.      **<u>CARNIVAL SPLENDOR AND THE DANGEROUS CONDITION:</u>** CARNIVAL owns and/or operates the *Carnival Splendor*.  The *Carnival Splendor* was first put into service on July 2, 2008. CARNIVAL has operated and maintained the ship continuously since July 2018.

11.      The *Carnival Splendor* has a capacity for 3,012 passengers and 1,150 crew members. The *Carnival Splendor* has 14 decks. Carnival's operations involve attracting crowds to a central location and controlling and ensuring the safety of those crowds. Deck 10 features the ship's spas, theatre and kids camp. Passengers use walkways to access these and other areas of the ship. These

3

walkways feature black tiles with a high gloss finish. The high gloss finish makes the floor shiny. Additionally, the due to the nature and material of the flooring, the tile floor on Deck 10 in the passenger walkways becomes unreasonably slippery when wet. Passenger's often walk into the interior of Deck 10 and onto the shiny black tile floor in wet bathing suits. This creates a slick and dangerous condition. This tile flooring is extremely slippery when wet. If not monitored and maintained on a regular basis, these areas can accumulate slick conditions, which make the floor slippery. This is an ongoing, continuous problem of which CARNIVAL is well-aware.

12.    **DESCRIPTION OF THE INCIDENT**. Because Carnival failed to properly monitor, clean, and dry a slick and dangerous condition existing on the tile floor in the passenger walkway leading to the kids club on Deck 10, B.R. and her mother, slipped, fell, and injured themselves on March 11, 2018. CARNIVAL allowed the black tile flooring to remain wet for an extended period. At 6:00pm, B.R. and her walked from the dining room up to Deck 10 to check out the kids club. The kids club was closed until 7:00pm. At least an hour later, B.R. and her mother returned to Deck 10 to visit the kids club. The black shiny tile flooring prevented, passengers like B.R., from seeing large puddles on the floor. The puddle that B. R. slipped in was at least four feet by four feet in diameter. B.R. hit her face on the tile when she slipped and fell. B.R.'s mother also slipped and fell on the title floor. There were two CARNIVAL crewmembers dressed in black on the other end of the corridor. The crewmembers were buffing the floor. However, there were no warning signs in the area where the crewmembers were working and there were no warning signs in the area where the incident occurred.

13.    As a result of the CARNIVAL's negligence, B.R. suffers severe and permanent injuries to her mouth, trauma to her gums and teeth, which required oral surgery, and may require future dental procedures. These are extremely painful injuries.  The loss of central incisors caused

a speech impediment and will continue to cause severe nerve damage to the central incisors. The permanent impairment caused to the root structure of the central incisors due to the blunt force trauma from B.R's fall will continue into maturity.

14. **NOTICE: PRIOR SIMILAR INCIDENTS**. CARNIVAL knew or should have known about the dangerous condition because of prior similar incidents. See *Caron v. NCL (Bahamas), Ltd.*, 910 F.3d 1359, 1370 (11th Cir. 2018) (accepting that that prior reports of similar incidents are sufficient to provide a cruise ship operator with notice of a dangerous condition); *Jones v. Otis Elevator Co.,* 861 F.2d 655, 661–62 (11th Cir. 1988) (stating that although "evidence of similar accidents might be relevant to the defendant's notice," "conditions substantially similar to the occurrence in question must have caused the prior accident"). See *Taiarol v. MSC Crociere S.A.*, 677 Fed. Appx. 599 (11th Cir. 2017) (while *Taiariol* was not required to show that another passenger slipped on the same step while in the same theater of the same ship during the same trip, she at least had to produce evidence that another person, while aboard one of the defendant's ships, slipped on the nosing of one of the ship's steps); See *Sorrels v. NCL (Bahamas) Ltd.,* 796 F.3d 1275, 1287 (11th Cir. 2015). ("The 'substantial similarity' doctrine does not require identical circumstances....").

    a. Lora Berman was severely injured on board the *Carnival Glory* on May 2, 2012. Berman was injured when she slipped and fell in a large amount of water on a dark tile or stone floor with dim lighting as she was walking down a hallway to the elevator. Berman filed a lawsuit as a result of this incident. See <u>Berman v. Carnival Corp.,</u> Case No. 1:12-cv-24402-DLG. CARNIVAL also owns and operates the *Carnival Glory.*

    b.  Elisandrya De Sade-Wade was severely injured on board the *Carnival Triumph* on August 29, 2011. De Sade-Wade was injured when she slipped and fell in a large amount of water on a dark tile or stone floor near the elevator. De Sade-Wade filed a lawsuit as a result of this incident. See <u>De Sade Wade v. Carnival Corp.</u>, Case No. 1:12-cv-22549-CMA. CARNIVAL also owns and operates the *Carnival Triumph*.

15.    **<u>NOTICE: SIZE OF PUDDLE</u>**. Additionally, CARNIVAL knew or should have known about the dangerous condition because the puddle was at least four feet by four feet. *Williams v. Carnival Corp.*, 2020 WL 837177, *10-11 (S.D. Fla. Feb. 20, 2020) (court denied defendant's *summary judgment* and held that the defendant had constructive notice by the size of the puddle which was four by two feet); *Aponte v. Royal Caribbean Cruise Lines Ltd.*, 739 F. App'x 531, 536 (11th Cir. 2018) (the Eleventh Circuit *reversed summary judgment* in favor of the defendant, holding that "[he] facts place the crew member in the immediate vicinity of a puddle of soap that was one-and-a-half feet in diameter.  Drawing all reasonable inferences in [plaintiff's] favor, a factfinder could conclude that the crew member knew or should have known about the puddle of soap at his feet and either removed the hazard or warned [plaintiff] of it.");*Thomas*, 203 F. Supp. 3d at 1190 (denying NCL's *motion for summary judgment* because a large puddle was present for at least fifteen minutes leading up to incident); *Erickson v. Carnival Cruise Lines*, 649 So.2d 942 (Fla. 3rd DCA 1995)(*reversed summary judgment* granted in favor of Carnival where the plaintiff slipped and fell in a clear puddle of water approximately 3-5 feet in diameter).

16.    **<u>NOTICE: CAUTION SIGNS.</u>** Additionally, CARNIVAL knew or should have known about the dangerous condition of their slippery tile floor because CARNIVAL posts caution signs in the area. *Merideth v. Carnival Corp.*, 49 F. Supp. 3d 1090, 1094 (S.D. Fla. 2014) (holding

that the "presence of warning cones" near an alleged slip and fall is evidence from which "a reasonable jury could ... infer that [the defendant] was on notice of the potentially hazardous condition."); *Horne v. Carnival Corp.*, 741 F. App'x 607, 608 (11th Cir. 2018) (holding that evidence that Carnival sometimes posted signs on a specific pool deck door that read "caution, strong winds" created "a genuine issue of fact" as to whether Carnival had actual or constructive notice of the hazardous condition); *Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1288-89 (11th Cir. 2015) (concluding that a cruise ship operator had notice that the ship's pool deck could be slippery after rain from evidence that crew members sometimes posted warning signs on the pool deck after rain.).

17.     **NOTICE: NEARBY CREWMEMBER.**   CARNIVAL knows or should know about the dangerous condition because there were crewmembers in the vicinity of where the incident occurred. *Plott v. NCL Am., LLC*, 786 Fed. Appx. 199, 203 (11th Cir. 2019) citing *Alterman Foods, Inc. v. Ligon*, 246 Ga. 620, 272 S.E.2d 327, 330 (Ga. 1980) ("In some cases the proprietor may be held to have constructive knowledge if the plaintiff shows that an employee of the proprietor was in the immediate area of the dangerous condition and could have easily seen the substance and removed the hazard." (quotation marks omitted)); *Aponte v. Royal Caribbean Cruise Lines Ltd.*, 739 F. App'x 531, 536 (11th Cir. 2018) ("[The] facts place the crew member in the immediate vicinity of a puddle of soap that was one-and-a-half feet in diameter.  Drawing all reasonable inferences in [plaintiff's] favor, a factfinder could conclude that the crew member knew or should have known about the puddle of soap at his feet and either removed the hazard or warned [plaintiff] of it."). *Haiser v. MSC Cruises (USA) Inc.,* 2019 WL 4693200, at *5 (S.D. Fla. Aug. 9, 2019) (denying summary judgment in part where a "reasonable factfinder could conclude that crewmembers knew or should have known about the presence of water on floor since they were in

the immediate vicinity and based on the amount of time the water was there."); *Markowitz v. Helen Homes of Kendall Corp.*, 826 So.2d 256, 261 (Fla. 2002) ("The fact that there were three employees in the vicinity of where the fall occurred is sufficient to create a jury question as to whether [Defendant] exercised reasonable care under the circumstances to maintain its premises in a safe condition.")

18. **NOTICE: VIOLATION OF INDUSTRY STANDARDS**. Additionally, CARNIVAL knows or should know that relevant industry standards, regulations, and codes dictate that its flooring should be kept safe for foreseeable conditions like the accumulation of water, food, spills, and liquids. "[T]he law in the Eleventh Circuit, as established by the former Fifth Circuit, is that advisory guidelines and recommendations, while not conclusive, are admissible as bearing on the standard of care in determining negligence." *Cook v. Royal Caribbean Cruises, Ltd.*, No. 11–20723–CIV, 2012 WL 1792628, at *3 (S.D.Fla. May 15, 2012) (citing *Muncie Aviation Corp. v. Party Doll Fleet, Inc.*, 519 F.2d 1178 (5th Cir.1975); *Frazier v. Continental Oil Co.*, 568 F.2d 378 (5th Cir.1978)).Such guidelines are also probative of the defendants' constructive knowledge of the allegedly hazardous condition. See *Cook*, 2012 WL 1792628, at *3; *Donlon v. Gluck Grp., LLC*, No. 09–5379 (JEI/KMW), 2011 WL 6020574, at *6 (D.N.J. Dec. 2, 2011); See *Holderbaum v. Carnival Corp.,* 87 F. Supp. 3d 1345 (S.D. Fla. February 19, 2015) (the court held that based on the IMO recommendation and the record evidence, a reasonable jury could conclude that the handrail was too large, hazardous, and that Defendant knew it was too large and hazardous) *Muncie Aviation Corp.,* 519 F.2d at 1181 (holding that to the extent the defendant's pilot failed to consult advisory materials issued by the Federal Aviation Administration, or failed to follow their recommendations, "the jury could permissibly infer that he failed to meet the appropriate standard of due care"); *Frazier*, 568 F.2d at 381–82 (holding that the district court erroneously excluded

testimony concerning violations of industry standards to establish the defendant's negligence); see also *Donlon*, 2011 WL 6020574, at *6 (denying summary judgment motion filed by houseboat manufacturer in lawsuit filed by person who fell down the stairs of a houseboat, holding that non-binding standards promulgated by the American Society for Testing and Materials were admissible because a jury could use the evidence to conclude that the stairs "were defectively designed" and because the standards put defendant "on constructive notice of the potential danger of the stairs").

19.    **NOTICE: POLICY AND PROCEDURES**. Additionally, CARNIVAL knew or should have known of the dangerous condition because CARNIVAL has written policies and procedures to prevent slips, trips and falls. CARNIVAL has also quick clean stations all over the *Carnival Splendor* for crewmembers to clean and dry wet surfaces.

20.    **NOTICE: ON-GOING REPETITIVE PROBLEM**. Additionally, CARNIVAL knew or should have known about the dangerous condition given that the title floors are often wet.

### COUNT I
### NEGLIGENT FAILURE TO MAINTAIN

21.    The Plaintiff, hereby adopts and re-alleges each and every allegation in paragraphs 1 through 20, above.

22.    This is an action for negligence based on Carnival's failure to maintain the tile floor on Deck 10 on board the *Carnival Splendor* in a safe manner.

23.    **DUTIES OWED BY THE DEFENDANT**.  CARNIVAL owes a "duty to exercise reasonable care for the safety of its passengers," including B.R. *See Hall v. Royal Caribbean Cruises, Limited*, 2004 WL 1621209 (Fla. 3d DCA 2004). The Defendant also owes a "duty to exercise reasonable care under the circumstances." *See Harnesk v. Carnival Cruise Lines, Inc.*, 1991 WL 329584 (S.D. Fla. 1991).

24.     CARNIVAL owes a duty as a common carrier to its passengers to maintain the flooring on board the *Carnival Splendor* in a safe manner. Carnival owes a duty of reasonable care under the circumstances. The circumstances are as follows: Carnival's operations involve attracting crowds to a central location and controlling and ensuring the safety of those crowds. Deck 10 features the ship's spas, theatre and kids camp. Passengers use walkways to access these and other areas of the ship. These walkways feature black tiles with a high gloss finish. The high gloss finish makes the floor shiny. Additionally, the due to the nature and material of the flooring, the tile floor on Deck 10 in the passenger walkways becomes unreasonably slippery when wet. The tile flooring walkways are also subject to significant passenger traffic as well as contaminants, like water, spills, and other slick substances. Passenger's often walk into the interior of Deck 10 and onto the shiny black tile floor in wet bathing suits. This creates a slick and dangerous condition. If not monitored and maintained on a regular basis, these areas can accumulate slick conditions, which make the floor slippery. Additionally, because the floor is slippery when cleaners put water on the floor to clean them, it is critical that these areas be blocked off, fans need to used to dry the floor from people walking over it and warning signs need to be posted otherwise passengers will and have been injured.  This is an ongoing, continuous problem of which CARNIVAL is well-aware. For these reasons, CARNIVAL's duty of care includes maintaining the flooring on board the *Carnival Splendor,* including the tile flooring where B.R. was injured on March 11, 2018.

25.     CARNIVAL, at all relevant times, was also under a legal duty to comply with mandatory international vessel safety regulations that are promulgated by the International Maritime Organization (IMO) under authority expressly conferred by the U.S. Senate-ratified international Safety of Life at Sea (SOLAS) treaty, including *Part C*, *Regulation 13*, <u>subpart 1.1</u> "safe escape routes shall be provided."); <u>subpart 1.2 (</u>"escape routes shall be maintained in a safe

condition clear of obstacles.")  CARNIVAL's walkways are escape routes that CARNIVAL knew or should have known it must maintain in a safe, clear, clean and secure condition.

26.     CARNIVAL had actual notice of the dangerous condition; and/or had constructive notice of the dangerous condition.

27.     CARNIVAL knew or should have known about the dangerous condition from prior similar incidents. CARNIVAL documents incidents in various ways which may include prior shipboard safety meetings; work orders; prior repairs; logs or databases of prior similar incidents; prior complaints made to guest services throughout its fleet; safety testing and/or inspections testing.

28.     CARNIVAL, at all relevant times, knew or should have known of industry safety standards applicable to maintaining safe walkways. Prominent safety organizations such as the International Maritime Organization (IMO), the U.S. Coast Guard, the U.S. Access Board, and the American Society for Testing and Materials (ASTM) International has led to the formulation and promulgation of stair and walkway safety standards and guidelines which apply to the marine environment.  See, *e.g.*, IMO, MSC Circular 735 (24 June 1996); U.S. Access Board, Draft Passenger Vessel Accessibility Guidelines (2000-present) and ADA Accessibility Guidelines; 46 CFR §§72.05-20(n), 116.438(h); ASTM F-1166-07; Life Safety Code; and Safety of Life at Sea SOLAS) Treaty.

29.     CARNIVAL knew or should have known of the dangerous condition because CARNIVAL has written policies and procedures to prevent slips, trips and falls. CARNIVAL has also quick clean stations all over the *Carnival Splendor* for crewmembers to clean and dry wet surfaces.

30.     CARNIVAL knew or should have known of the dangerous condition because of the size of the puddle.

31.    CARNIVAL knew or should have known about the dangerous condition because it is an on-going repetitive problem.

32.    **CARNIVAL BREACHES OF DUTY.**  CARNIVAL breached its duty to maintain the tile floor on Deck 10 on board the *Carnival Splendor* where B.R. was injured on March 11, 2018.  CARNIVAL breached its duties to B.R. by its actions and conduct.  CARNIVAL through its crew members failed to properly clean and dry the tile floor. CARNIVAL through its crew members failed to inspect and monitor the area even though CARNIVAL knew that this area can accumulate slick conditions, which make the floor slippery. CARNIVAL also failed to comply with comply with applicable industry standards, statutes, and/or regulations which invokes the Pennsylvania Rule and shifts the burden of proof to the Defendant in the proof of negligence or proof of the absence of negligence. CARNIVAL's violation of applicable and mandatory safety regulations and standards constitutes negligence *per se*.

33.    **PROXIMATE CAUSE**: CARNIVAL's failure to maintain the tile floor on Deck 10 on board the *Carnival Splendor* proximately caused B.R.'s injuries on March 11, 2018. Had CARNIVAL properly maintained the tile flooring on board the *Carnival Splendor* on March 11, 2018, B.R. would have never been injured on board the *Carnival Splendor.*

34.    **DAMAGES**: CARNIVAL's negligence proximately caused permanent injuries and damages to B.R. in the past and in the future. Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past; and lost income and income earning capacity in the future. Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the

enjoyment of life.   The losses are either permanent or continuing. B.R. has suffered these losses in the past and will continue to suffer them in the future.

WHEREFORE, NATALIE REEDER, as mother and natural guardian of B.R., a minor, demands Judgment against CARNVIAL for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past; and lost income and income earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under the General Maritime Law, and any and all other damages which the Court deems just or appropriate.

**COUNT II**
**NEGLIGENT FAILURE TO WARN**

35.     The Plaintiff, hereby adopts and re-alleges each and every allegation in paragraphs 1 through 20, above.

36.     This is an action for negligence of CARNIVAL failing to warn passengers, including B.R., of its hazards, risks or dangers.

37.     **DUTIES OWED BY THE DEFENDANT**.  CARNIVAL owes a "duty to exercise reasonable care for the safety of its passengers," including B.R. *See Hall v. Royal Caribbean Cruises, Limited*, 2004 WL 1621209 (Fla. 3d DCA 2004). The Defendant also owes a "duty to exercise reasonable care under the circumstances." *See Harnesk v. Carnival Cruise Lines, Inc.*, 1991 WL 329584 (S.D. Fla. 1991). Additionally, the Defendant's "duty is to warn of dangers known to the carrier in places where the passenger is invited to or may reasonably be expected to visit." *See Vierling*

*v. Celebrity Cruises, Inc.,* 339 F.3d 1309 (11th Cir. 2003) ("Courts sitting in admiralty have long recognized an obligation on the part of a carrier to furnish its passengers with a reasonably safe means of boarding and leaving the vessel, that this obligation is non-delegable, and that even the slightest negligence renders a carrier liable."); *Carlisle v. Ulysses Line Limited*, 475 So.2d 248 (Fla. 3d DCA 1985).

38.     CARNIVAL owes a duty as a common carrier to its passengers to warn of dangers known to CARNIVAL where CARNIVAL invite or reasonably expect passengers to go. CARNIVAL owes a duty of reasonable care under the circumstances. The circumstances are as follows: Carnival's operations involve attracting crowds to a central location and controlling and ensuring the safety of those crowds. Deck 10 features the ship's spas, theatre and kids camp. Passengers use walkways to access these and other areas of the ship. These walkways feature black tiles with a high gloss finish. The high gloss finish makes the floor shiny. Additionally, the due to the nature and material of the flooring, the tile floor on Deck 10 in the passenger walkways becomes unreasonably slippery when wet. The tile flooring walkways are also subject to significant passenger traffic as well as contaminants, like water, spills, and other slick substances. Passenger's often walk into the interior of Deck 10 and onto the shiny black tile floor in wet bathing suits. This creates a slick and dangerous condition.  If not monitored and maintained on a regular basis, these areas can accumulate slick conditions, which make the floor slippery. Additionally, because the floor is slippery when cleaners put water on the floor to clean them, it is critical that these areas be blocked off, fans need to used to dry the floor from people walking over it and warning signs need to be posted otherwise passengers will and have been injured. This is an ongoing, continuous problem of which CARNIVAL is well-aware. For these reasons, CARNIVAL's duty of care

includes warning of the dangerous conditions on board the *Carnival Splendor,* including the tile flooring where B.R. was injured on March 11, 2018.

39.     CARNIVAL, at all relevant times, was also under a legal duty to comply with mandatory international vessel safety regulations that are promulgated by the International Maritime Organization (IMO) under authority expressly conferred by the U.S. Senate-ratified international Safety of Life at Sea (SOLAS) treaty, including *Part C*, *Regulation 13*, subpart 1.1 "safe escape routes shall be provided."); subpart 1.2 ("escape routes shall be maintained in a safe condition clear of obstacles.")  CARNIVAL's walkways are escape routes that CARNIVAL knew or should have known it must maintain in a safe, clear, clean and secure condition.

40.     CARNIVAL had actual notice of the dangerous condition; and/or had constructive notice of the dangerous condition.

41.     CARNIVAL knew or should have known about the dangerous condition from prior similar incidents. CARNIVAL documents incidents in various ways which may include prior shipboard safety meetings; work orders; prior repairs; logs or databases of prior similar incidents; prior complaints made to guest services throughout its fleet; safety testing and/or inspections testing.

42.     CARNIVAL, at all relevant times, knew or should have known of industry safety standards applicable to maintaining safe walkways. Prominent safety organizations such as the International Maritime Organization (IMO), the U.S. Coast Guard, the U.S. Access Board, and the American Society for Testing and Materials (ASTM) International has led to the formulation and promulgation of stair and walkway safety standards and guidelines which apply to the marine environment.  See, *e.g.*, IMO, MSC Circular 735 (24 June 1996); U.S. Access Board, Draft Passenger

Vessel Accessibility Guidelines (2000-present) and ADA Accessibility Guidelines; 46 CFR §§72.05-20(n), 116.438(h); ASTM F-1166-07; Life Safety Code; and Safety of Life at Sea SOLAS) Treaty.

43.    CARNIVAL knew or should have known of the dangerous condition because CARNIVAL has written policies and procedures to prevent slips, trips and falls. CARNIVAL has also quick clean stations all over the *Carnival Splendor* for crewmembers to clean and dry wet surfaces.

44.    CARNIVAL knew or should have known of the dangerous condition because of the size of the puddle.

45.    CARNIVAL knew or should have known about the dangerous condition because it is an on-going repetitive problem.

46.    CARNIVAL is aware that it owes a duty as a common carrier to its passengers to warn of dangers known to CARNIVAL where CARNIVAL invite or reasonably expect passengers to go. CARNIVAL distributes crew member training materials; safety warning messages including those made through verbal announcement, newsletters and safety videos.  CARNIVAL train its crew members to warn passengers of hazardous or slippery conditions verbally, with warning signs, and/or marking the area or blocking off the area to prevent passengers from walking on the hazardous and/or slippery condition.

47.    **CARNIVAL BREACHES OF DUTY.**  CARNIVAL breached its duty to warn B.R. about the dangerous conditions on board the *Carnival Splendor,* including the tile flooring where B.R. was injured on March 11, 2018.  CARNIVAL breached its duties to B.R. by its actions and conduct.  CARNIVAL through its crew members failed to reasonably and regularly place signs, stickers, lights, and other visual or written notices on or near the dangerous condition. CARNIVAL' crew members failed to reasonably and regularly make audible announcements

regarding the dangerous condition. CARNIVAL also failed to comply with comply with applicable industry standards, statutes, and/or regulations which invokes the Pennsylvania Rule and shifts the burden of proof to the Defendant in the proof of negligence or proof of the absence of negligence. CARNIVAL's violation of applicable and mandatory safety regulations and standards constitutes negligence *per se*.

48.     **PROXIMATE CAUSE**: CARNIVAL's failure to properly warn B.R of the dangerous condition proximately caused the B.R.'s injuries. Had CARNIVAL properly warned B.R. of the dangerous condition, B.R. would have been aware of the dangerous conditions on board the *Carnival Splendor*, including the tile flooring where B.R. was injured on March 11, 2018. B.R. therefore would have never been injured on board the *Carnival Splendor* on March 11, 2018.

49.     **DAMAGES**: NCL's negligence proximately caused permanent injuries and damages to B.R. in the past and in the future. Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past; and lost income and income earning capacity in the future. Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.   The losses are either permanent or continuing. B.R. has suffered these losses in the past and will continue to suffer them in the future.

WHEREFORE, NATALIE REEDER, as mother and natural guardian of B.R., a minor, demands Judgment against CARNVIAL for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in

the future; lost income in the past; and lost income and income earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under the General Maritime Law, and any and all other damages which the Court deems just or appropriate.

**COUNT III**
**NEGLIGENT TRAINING OF PERSONNEL**

50.      The Plaintiff, hereby adopts and re-alleges each and every allegation in Paragraphs 1-20, above.

51.      This is an action for negligence of CARNIVAL negligent training of shipboard crewmembers.

52.      **DUTIES OWED BY THE DEFENDANT**.  CARNIVAL  owes a "duty to exercise reasonable care for the safety of its passengers," including B.R. *See Hall v. Royal Caribbean Cruises, Limited*, 2004 WL 1621209 (Fla. 3d DCA 2004). The Defendant also owes a "duty to exercise reasonable care under the circumstances." *See Harnesk v. Carnival Cruise Lines, Inc.*, 1991 WL 329584 (S.D. Fla. 1991). The cruise line is directly negligent for failing to train its shipboard crew members.

53.      CARNIVAL owes a duty as a common carrier to its passengers to train its crew members warn of dangers known to CARNIVAL where CARNIVAL invite or reasonably expect passengers to go.  CARNIVAL owes a duty of reasonable care under the circumstances. The circumstances are as follows: Carnival's operations involve attracting crowds to a central location and controlling and ensuring the safety of those crowds. Deck 10 features the ship's spas, theatre and kids camp. Passengers use walkways to access these and other areas of the ship. These

walkways feature black tiles with a high gloss finish. The high gloss finish makes the floor shiny. Additionally, the due to the nature and material of the flooring, the tile floor on Deck 10 in the passenger walkways becomes unreasonably slippery when wet. The tile flooring walkways are also subject to significant passenger traffic as well as contaminants, like water, spills, and other slick substances. Passenger's often walk into the interior of Deck 10 and onto the shiny black tile floor in wet bathing suits. This creates a slick and dangerous condition.  If not monitored and maintained on a regular basis, these areas can accumulate slick conditions, which make the floor slippery. Additionally, because the floor is slippery when cleaners put water on the floor to clean them, it is critical that these areas be blocked off, fans need to used to dry the floor from people walking over it and warning signs need to be posted otherwise passengers will and have been injured. This is an ongoing, continuous problem of which CARNIVAL is well-aware. For these reasons, CARNIVAL's duty of care includes training crewmember to warn passengers about the dangerous conditions on board the *Carnival Splendor*, including the tile flooring where B.R. was injured on March 11, 2018.

54.     CARNIVAL, at all relevant times, was also under a legal duty to comply with mandatory international vessel safety regulations that are promulgated by the International Maritime Organization (IMO) under authority expressly conferred by the U.S. Senate-ratified international Safety of Life at Sea (SOLAS) treaty, including *Part C*, *Regulation 13*, subpart 1.1 "safe escape routes shall be provided."); subpart 1.2 ("escape routes shall be maintained in a safe condition clear of obstacles.")  CARNIVAL's walkways are escape routes that CARNIVAL knew or should have known it must maintain in a safe, clear, clean and secure condition.

55.     CARNIVAL trains its shipboard crewmembers to warn passengers of the dangerous conditions on board the *Carnival Splendor*, that may cause injuries to passengers. CARNIVAL

knew, or should have known, of the importance of training its crewmembers to warn passengers of the dangerous conditions on board the *Carnival Splendor*. CARNIVAL trains its crewmembers that passengers may not know that floors or surfaces on board *Carnival Splendor* may be dangerous and could cause injuries to passengers. CARNIVAL knew or should have known the importance of training its crewmembers that passengers may not know that floors or surfaces on board *Carnival Splendor* may be dangerous and could cause injuries to passengers. CARNIVAL trains its crewmembers to warn passengers of hazards verbally, with warning signs, and/or marking the area or blocking off the area to prevent passengers from being injured. CARNIVAL knew or should have known of the importance of training its crew members to warn passengers of hazards verbally, with warning signs, and/or marking the area or blocking off the area to prevent passengers from being injured. CARNIVAL also distributes crew member training materials; safety warning messages including those made through verbal announcement, newsletters and safety videos. However, despite knowing how and the reason why CARNIVAL should train its crewmembers, CARNIVAL failed to do so.

56.     CARNIVAL had actual notice of the dangerous condition; and/or had constructive notice of the dangerous condition.

57.     CARNIVAL knew or should have known about the dangerous condition from prior similar incidents. CARNIVAL documents incidents in various ways which may include prior shipboard safety meetings; work orders; prior repairs; logs or databases of prior similar incidents; prior complaints made to guest services throughout its fleet; safety testing and/or inspections testing.

58.     CARNIVAL, at all relevant times, knew or should have known of industry safety standards applicable to maintaining safe walkways. Prominent safety organizations such as the

International Maritime Organization (IMO), the U.S. Coast Guard, the U.S. Access Board, and the American Society for Testing and Materials (ASTM) International has led to the formulation and promulgation of stair and walkway safety standards and guidelines which apply to the marine environment.  See, *e.g.*, IMO, MSC Circular 735 (24 June 1996); U.S. Access Board, Draft Passenger Vessel Accessibility Guidelines (2000-present) and ADA Accessibility Guidelines; 46 CFR §§72.05-20(n), 116.438(h); ASTM F-1166-07; Life Safety Code; and Safety of Life at Sea SOLAS) Treaty.

59.     CARNIVAL knew or should have known of the dangerous condition because CARNIVAL has written policies and procedures to prevent slips, trips and falls. CARNIVAL has also quick clean stations all over the *Carnival Splendor* for crewmembers to clean and dry wet surfaces.

60.     CARNIVAL knew or should have known of the dangerous condition because of the size of the puddle.

61.     CARNIVAL knew or should have known about the dangerous condition because it is an on-going repetitive problem.

62.     CARNIVAL should have become aware that it had failed to properly train its crew members given that the crew member(s) were failing to properly warn passengers of the dangerous conditions on board the *Carnival Splendor*  including the tile flooring where B.R. was injured on March 11, 2018.

63.     **CARNIVAL BREACHED ITS DUTY**: CARNIVAL breached its duty of care owed to B.R. and was negligent by failing to reasonably train its crewmembers to warn passengers of the dangerous conditions on board the *Carnival Splendor*, including the tile flooring where B.R. was injured on March 11, 2018. CARNIVAL also failed to comply with comply with applicable industry standards, statutes, and/or regulations which invokes the Pennsylvania Rule and shifts the

burden of proof to the Defendant in the proof of negligence or proof of the absence of negligence. CARNIVAL's violation of applicable and mandatory safety regulations and standards constitutes negligence *per se.*

64.   **PROXIMATE CAUSE**: CARNIVAL's failure to properly train CARNIVAL's crew members proximately caused B.R.'s injuries.   Had CARNIVAL properly trained CARNIVAL's crew members to warn passengers of dangerous conditions on board the *Carnival Splendor*, including the tile flooring where B.R. was injured on March 11, 2018, the crewmember would have warned B.R. of the dangerous condition and B.R. would have been aware of the dangerous condition. B.R. therefore would never been injured on March 11, 2018.

65.   **DAMAGES**: CARNIVAL's negligence proximately caused permanent injuries and damages to B.R. in the past and in the future. Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past; and lost income and income earning capacity in the future. Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.   The losses are either permanent or continuing. B.R. has suffered these losses in the past and will continue to suffer them in the future.

WHEREFORE, NATALIE REEDER, as mother and natural guardian of B.R., a minor, demands Judgment against CARNVIAL for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past; and lost income and income earning capacity in the future; non-

economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under the General Maritime Law, and any and all other damages which the Court deems just or appropriate.

**COUNT IV**
**NEGLIGENT SUPERVISION OF PERSONNEL**

66.     The Plaintiff, hereby adopts and re-alleges each and every allegation in Paragraphs 1-20, above.

67.     This is an action for negligence of CARNIVAL negligent supervision of shipboard crewmembers.

68.     **DUTIES OWED BY THE DEFENDANT**.  CARNIVAL owes a "duty to exercise reasonable care for the safety of its passengers," including B.R. *See Hall v. Royal Caribbean Cruises, Limited*, 2004 WL 1621209 (Fla. 3d DCA 2004). The Defendant also owes a "duty to exercise reasonable care under the circumstances." *See Harnesk v. Carnival Cruise Lines, Inc.*, 1991 WL 329584 (S.D. Fla. 1991). The cruise line is directly negligent for failing to supervise its shipboard crew members.

69.     CARNIVAL owes a duty as a common carrier to its passengers to supervise its crew members to ensure CARNIVAL's crew members are properly warning passengers of dangers known to CARNIVAL where CARNIVAL invite or reasonably expect passengers to go. CARNIVAL owes a duty of reasonable care under the circumstances. The circumstances are as follows: Carnival's operations involve attracting crowds to a central location and controlling and ensuring the safety of those crowds. Deck 10 features the ship's spas, theatre and kids camp. Passengers use walkways to access these and other areas of the ship. These walkways feature black

tiles with a high gloss finish. The high gloss finish makes the floor shiny. Additionally, the due to the nature and material of the flooring, the tile floor on Deck 10 in the passenger walkways becomes unreasonably slippery when wet. The tile flooring walkways are also subject to significant passenger traffic as well as contaminants, like water, spills, and other slick substances. Passenger's often walk into the interior of Deck 10 and onto the shiny black tile floor in wet bathing suits. This creates a slick and dangerous condition.  If not monitored and maintained on a regular basis, these areas can accumulate slick conditions, which make the floor slippery. Additionally, because the floor is slippery when cleaners put water on the floor to clean them, it is critical that these areas be blocked off, fans need to used to dry the floor from people walking over it and warning signs need to be posted otherwise passengers will and have been injured. This is an ongoing, continuous problem of which CARNIVAL is well-aware. For these reasons, CARNIVAL's duty of care includes supervising its crew members to ensure that passengers are properly warned about the dangerous conditions on board the *Carnival Splendor,* including the tile flooring where B.R. was injured on March 11, 2018.

70.    CARNIVAL, at all relevant times, was also under a legal duty to comply with mandatory international vessel safety regulations that are promulgated by the International Maritime Organization (IMO) under authority expressly conferred by the U.S. Senate-ratified international Safety of Life at Sea (SOLAS) treaty, including *Part C*, *Regulation 13*, subpart 1.1 "safe escape routes shall be provided."); subpart 1.2 ("escape routes shall be maintained in a safe condition clear of obstacles.")  CARNIVAL's walkways are escape routes that CARNIVAL knew or should have known it must maintain in a safe, clear, clean and secure condition.

71.    CARNIVAL had actual notice of the dangerous condition; and/or had constructive notice of the dangerous condition.

24

72.     CARNIVAL knew or should have known about the dangerous condition from prior similar incidents. CARNIVAL documents incidents in various ways which may include prior shipboard safety meetings; work orders; prior repairs; logs or databases of prior similar incidents; prior complaints made to guest services throughout its fleet; safety testing and/or inspections testing.

73.     CARNIVAL, at all relevant times, knew or should have known of industry safety standards applicable to maintaining safe walkways. Prominent safety organizations such as the International Maritime Organization (IMO), the U.S. Coast Guard, the U.S. Access Board, and the American Society for Testing and Materials (ASTM) International has led to the formulation and promulgation of stair and walkway safety standards and guidelines which apply to the marine environment.  See, *e.g.*, IMO, MSC Circular 735 (24 June 1996); U.S. Access Board, Draft Passenger Vessel Accessibility Guidelines (2000-present) and ADA Accessibility Guidelines; 46 CFR §§72.05-20(n), 116.438(h); ASTM F-1166-07; Life Safety Code; and Safety of Life at Sea SOLAS) Treaty.

74.     CARNIVAL knew or should have known of the dangerous condition because CARNIVAL has written policies and procedures to prevent slips, trips and falls. CARNIVAL has also quick clean stations all over the *Carnival Splendor* for crewmembers to clean and dry wet surfaces.

75.     CARNIVAL knew or should have known of the dangerous condition because of the size of the puddle.

76.     CARNIVAL knew or should have known about the dangerous condition because it is an on-going repetitive problem

77.     CARNIVAL should have become aware of the crew member(s) failure to properly warn passengers about the dangerous conditions on board the *Carnival Splendor*, the tile flooring where B.R. was injured on March 11, 2018.

78.     **CARNIVAL BREACHED ITS DUTY**: CARNIVAL breached its duty of care owed to B.R. and was negligent by failing to reasonably supervise its crewmembers to ensure that the crew members are warning passengers about the dangerous conditions on board the *Carnival Splendor*, the tile flooring where B.R. was injured on March 11, 2018. CARNIVAL also failed to comply with comply with applicable industry standards, statutes, and/or regulations which invokes the Pennsylvania Rule and shifts the burden of proof to the Defendant in the proof of negligence or proof of the absence of negligence. CARNIVAL's violation of applicable and mandatory safety regulations and standards constitutes negligence *per se*.

79.     **PROXIMATE CAUSE**: CARNIVAL's failure to properly supervise CARNIVAL crew members proximately caused B.R.'s injuries.   Had CARNIVAL properly supervised CARNIVAL's crew members to warn passengers about the dangerous conditions on board the *Carnival Splendor*, including the tile flooring where B.R. was injured on March 11, 2018, the crewmember would have warned B.R. of the dangerous  condition and B.R. would have been aware of the dangerous condition. B.R. therefore would have never been injured on board the *Carnival Splendor* on March 11, 2018.

80.     **DAMAGES**: CARNIVAL's negligence proximately caused permanent injuries and damages to B.R. in the past and in the future. Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past; and lost income and income earning capacity in the future. Those injuries and damages also include

but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.   The losses are either permanent or continuing. B.R. has suffered these losses in the past and will continue to suffer them in the future.

WHEREFORE, NATALIE REEDER, as mother and natural guardian of B.R., a minor, demands Judgment against CARNVIAL for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past; and lost income and income earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under the General Maritime Law, and any and all other damages which the Court deems just or appropriate.

## COUNT V
## NEGLIGENT DESIGN, CONSTRUCTION AND SELECTION OF MATERIALS

81.     The Plaintiff, hereby adopts and re-alleges each and every allegation in Paragraphs 1-20, above.

82.     This is an action for negligence due to CARNIVAL's negligent design, construction and selection of materials.

83.     **DUTIES OWED BY CARNIVAL**: CARNIVAL owes a "duty to exercise reasonable care for the safety of its passengers" including B.R. *See Hall v. Royal Caribbean Cruises, Limited* 2004 A.M.C. 1913, 2004 WL 1621209, 29 FLWD 1672, Case No. 3d03-2132

(Fla. 3d DCA Opinion filed July 21, 2004). The Defendant also owes a "duty to exercise reasonable care under the circumstances**."** *See Harnesk v. Carnival Cruise Lines, Inc,* 1992 A.M.C. 1472, 1991 WL 329584 (S.D. Fla. 1991). The cruise line is directly negligent for negligent design, construction and selection of materials on the *Carnival Splendor.*

84.     CARNIVAL owes a duty of reasonable care under the circumstances. The circumstances are as follows: CARNIVAL owns and/or operates the *Carnival Splendor.*   The *Carnival Splendor* was first put into service on July 2, 2008. CARNIVAL has operated and maintained the ship continuously since July 2008.

85.     CARNIVAL participated in, approved, created and/or controlled or had the right to control the design of the structures as well as the selection of all materials on board the *Carnival Splendor* including floors and surfaces. CARNIVAL employs architects, designers, and engineers. The *Carnival Splendor* was designed by or at the direction of CARNIVAL's shoreside New Build and other shoreside departments.

86.     The *Carnival Splendor* was designed by or at the direction of CARNIVAL's shoreside New Build and other shoreside departments. CARNIVAL maintains shoreside departments that are responsible for the design, selection and construction of CARNIVAL's ships. CARNIVAL also maintains shoreside departments that are responsible for changes and modification to the design, construction and selection of materials when CARNIVAL refit or modify its ships. These shoreside departments consist of naval architects, engineers, designers and other employees who are employed by CARNIVAL.

87.     CARNIVAL custom built the *Carnival Splendor* cruise ship in a shipyard in Italy under the constant supervision of CARNIVAL's onsite construction managers, designers, architects, and engineers. Under the contract with the shipyard, CARNIVAL not only had full

access to the ship to inspect and the ability to inspect the designs used for construction, but also has the ability to reject and change any design or construction at the shipyard and for a period of time thereafter.

88.     CARNIVAL custom built the *Carnival Splendor* cruise ship in partnership with Fincantieri Cantieri Navali, a shipyard in Italy. The *Carnival Splendor* was built under the constant supervision of CARNIVAL's onsite construction managers, designers, architects, and engineers. Under the contract with the shipyard, CARNIVAL not only had full access to the ship to inspect and the ability to inspect the designs used for construction, but also has the ability to reject and change any design or construction at the shipyard and for a period of time thereafter. CARNIVAL holds the ultimate control under their contract with the yard, if an item or design is rejected or at issue and not resolved, CARNIVAL can withhold payment.  That includes the materials used in the all floors or surfaces on Deck 10 onboard the *Carnival Splendor* which caused this incident and these injuries.

89.     CARNIVAL, at all relevant times, was also under a legal duty to comply with mandatory international vessel safety regulations that are promulgated by the International Maritime Organization (IMO) under authority expressly conferred by the U.S. Senate-ratified international Safety of Life at Sea (SOLAS) treaty, including *Part C*, *Regulation 13*, subpart 1.1 "safe escape routes shall be provided."); subpart 1.2 ("escape routes shall be maintained in a safe condition clear of obstacles.")  CARNIVAL's walkways are escape routes that CARNIVAL knew or should have known it must maintain in a safe, clear, clean and secure condition.

90.     CARNIVAL chose to create, design, and construct all of the flooring and materials on board the *Carnival Splendor* including the tile flooring where B.R. was injured on March 11, 2018.

91.     CARNIVAL selected and/or approved of all materials on board the *Carnival Splendor* including the tile flooring where B.R. was injured on March 11, 2018.

92.     CARNIVAL should have known that the flooring that it chose to create, design, and construct is unreasonably dangerous.

93.     CARNIVAL had actual notice of the dangerous condition; and/or had constructive notice of the dangerous condition.

94.     CARNIVAL knew or should have known about the dangerous condition from prior similar incidents. CARNIVAL documents incidents in various ways which may include prior shipboard safety meetings; work orders; prior repairs; logs or databases of prior similar incidents; prior complaints made to guest services throughout its fleet; safety testing and/or inspections testing.

95.     CARNIVAL, at all relevant times, knew or should have known of industry safety standards applicable to maintaining safe walkways. Prominent safety organizations such as the International Maritime Organization (IMO), the U.S. Coast Guard, the U.S. Access Board, and the American Society for Testing and Materials (ASTM) International has led to the formulation and promulgation of stair and walkway safety standards and guidelines which apply to the marine environment.  See, *e.g.*, IMO, MSC Circular 735 (24 June 1996); U.S. Access Board, Draft Passenger Vessel Accessibility Guidelines (2000-present) and ADA Accessibility Guidelines; 46 CFR §§72.05-20(n), 116.438(h); ASTM F-1166-07; Life Safety Code; and Safety of Life at Sea SOLAS) Treaty.

96.     CARNIVAL knew or should have known of the dangerous condition because CARNIVAL has written policies and procedures to prevent slips, trips and falls. CARNIVAL has also quick clean stations all over the *Carnival Splendor* for crewmembers to clean and dry wet surfaces.

97.     CARNIVAL knew or should have known of the dangerous condition because of the size of the puddle.

98.     CARNIVAL knew or should have known about the dangerous condition because it is an on-going repetitive problem.

99.     Because CARNIVAL had the ultimate control over the design, construction and selection of materials for its ships, CARNIVAL could refuse to approve the design, construction and selection of materials used on board the *Carnival Splendor*. CARNIVAL knew or should have known about the dangerousness of the door the flooring where B.R. was injured on March 11, 2018.

100.    CARNIVAL knew or should have known about the dangerous condition on board the *Carnival Splendor* since the floors were installed and/or any changes or modifications.

101.    **CARNIVAL BREACHED ITS DUTY**: CARNIVAL breached its duty of care owed to B.R. and was negligent by failing to design, construct, select, approve and/or reject the flooring where B.R. was injured on March 11, 2018. CARNIVAL failed to design, construct, select, approve and/or reject materials that complied with industry standards.  The design and/or materials CARNIVAL selected and used for the flooring on board the *Carnival Splendor* is unreasonably dangerous. CARNIVAL also failed to comply with comply with applicable industry standards, statutes, and/or regulations which invokes the Pennsylvania Rule and shifts the burden of proof to the Defendant in the proof of negligence or proof of the absence of negligence. CARNIVAL's violation of applicable and mandatory safety regulations and standards constitutes negligence *per se.*

102.    **PROXIMATE CAUSE**: CARNIVAL's negligent design, construct and select materials proximately caused B.R.'s injuries.  Had CARNIVAL properly designed, constructed

and selected the materials B.R. would have never been injured on board the *Carnival Splendor* on March 11, 2018.

103.    **DAMAGES**: CARNIVAL's negligence proximately caused permanent injuries and damages to B.R. in the past and in the future. Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past; and lost income and income earning capacity in the future. Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.   The losses are either permanent or continuing. B.R. has suffered these losses in the past and will continue to suffer them in the future.

WHEREFORE, NATALIE REEDER, as mother and natural guardian of B.R., a minor, demands Judgment against CARNVIAL for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past; and lost income and income earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under the General Maritime Law, and any and all other damages which the Court deems just or appropriate.

By:    *s/ John H. Hickey, Esq.*
           **JOHN H. HICKEY**, **ESQ.** (FBN 305081)

hickey@hickeylawfirm.com
federalcourtfilings@hickeylawfirm.com
**LISA C. GOODMAN, ESQ**. (FBN118698)
lgoodman@hickeylawfirm.com
**HICKEY LAW FIRM, P.A.**
1401 Brickell Avenue, Ste. 510
Miami, Florida 33131-3504
Telephone: (305) 371-8000
Facsimile: (305) 371-3542
*Attorney for the Plaintiff*